Robert F. HUMMER and Dean T. Upton,
Appellants,

v̇.

The **ADMINISTRATOR OF** the **NA-
TIONAL AERONAUTICS AND
SPACE ADMINISTRATION**, Appellee.

Patent Appeal No. 9182.

United States Court of Customs
and Patent Appeals.

Aug. 22, 1974.

Rehearing Denied Dec. 5, 1974.

W. H. MacAllister, John M. Lee, Los Angeles, Cal. (Fulwider, Patton, Rieber, Lee & Utecht), Los Angeles, Cal., attorneys of record, for appellants.

Neil B. Siegel, Washington, D. C., Robert F. Kempf, Silver Spring, Md., for The Administration of the National Aeronautics and Space Administration. Leonard Rawicz, Potomac, Md., of counsel.

Before MARKEY, Chief Judge, and RICH, LANE and MILLER, Judges, and ALMOND, Senior Judge.

ALMOND, Senior Judge.

This is an appeal from the decision of the Patent Office Board of Interferences in a proceeding under section 305 of the National Aeronautics and Space Act of 1958 (42 U.S.C. § 2457). The board held that the application [1] filed by Hummer et al. (Hummer) should issue as a patent to the Administrator of the National Aeronautics and Space Administration (NASA) on behalf of the United States. We affirm.

The pertinent provisions of section 305 read:

Property rights in inventions—Exclusive property of United States; issuance of patent

(a) Whenever any invention is made in the performance of any work under any contract of the Administration, and the Administrator determines that—

(1) the person who made the invention was employed or assigned to perform research, development, or exploration work and the invention is related to the work he was employed or assigned to perform, or that it was within the scope of his employment duties, whether or not it was made during working hours, or with a contribution by the Government of the use of Government facilities, equipment, materials, allocated funds, information proprietary to the Government, or services of Government employees during working hours; or

(2) the person who made the invention was not employed or assigned to perform research, develop-

---

[1]. Serial No. 583,219 filed September 30, 1966.

ment, or exploration work, but the invention is nevertheless related to the contract, or to the work or duties he was employed or assigned to perform, and was made during working hours, or with a contribution from the Government of the sort referred to in clause (1),

such invention shall be the exclusive property of the United States, and if such invention is patentable a patent therefor shall be issued to the United States upon application made by the Administrator, unless the Administrator waives all or any part of the rights of the United States to such invention in conformity with the provisions of subsection (f) of this section.

\*　　\*　　\*　　\*　　\*　　\*

### Definitions

(j) As used in this section—

\*　　\*　　\*　　\*　　\*　　\*

(2) the term "contract" means any actual or proposed contract, agreement, understanding, or other arrangement, and includes any assignment, substitution of parties, or subcontract executed or entered into thereunder; and

(3) the term "made", when used in relation to any invention, means the conception or first actual reduction to practice of such invention.

The invention, title to which is in dispute, is related to a "spin scan" camera arrangement that can be used to photograph cloud formations from a satellite stationed in a synchronous orbit. A synchronous orbit is one in which the satellite hovers over a single point on the earth.

The arrangement includes a telescope mounted on the satellite in such a way that it can scan a narrow band of the earth's surface from east to west. This horizon-to-horizon scan is accomplished by maintaining the axis about which the satellite turns parallel to the earth's axis.

The telescope is also provided with an arcuate support which allows it to pivot upwardly or downwardly in order to provide north to south scanning. The support moves in discrete increments or steps keyed to the rotation of the satellite about its axis, i. e., one step for each turn of the satellite. In this way the telescope views a large portion of the earth as a series of narrow bands. Limit switches reverse upward or downward movement of the telescope.

The image seen by the telescope is reflected onto a photomultiplier device generating electronic signals which are transmitted to earth. The image seen by the telescope is recomposed as a photograph from these signals. A complete photograph is a composite of the narrow bands seen by the telescope. In actual practice, the photograph is made up of 2,000 lines, each line representing a band 2.2 miles in width running from east horizon to west horizon.

Of the nine claims involved in this proceeding, claim 1 is sufficiently representative and is reproduced below:

In a radiation sensing camera arrangement adapted for use in a rotating body to scan a terrestrial area and wherein the body is in relatively stationary relation to the scan area, the combination of the camera adapted for carriage by the body and for rotation therewith,

said camera including optical means directed outwardly of the body to receive radiation data and having an optical axis angularly related to the axis of rotation of the body,

pivot means mounting the camera to the body, drive means to induce incremental pivotal motion of the camera relative to the body whereby the optical axis is moved through a determined arc to scan an area of a terrestrial body, and

radiation sensing means in operative alignment with the optical axis for receiving physical data from the scanned area.

The board held that the invention was first actually reduced to practice on December 6, 1966 when a synchronously or-

biting satellite, known as the ATS–1 satellite, embodying the claimed camera arrangement successfully transmitted signals to earth from which photographs of cloud formations were made. In its view, this entitled the Administrator to receive at patent, since the camera itself had been built at Santa Barbara Research Center, a wholly owned subsidiary of Hughes Aircraft Co., under Subcontract No. 1 of NAS 5–9677, a contract between NASA and the University of Wisconsin, and installed in the ATS–1 satellite under provisions of NAS 5–3823, a contract between Hughes Aircraft Co. and NASA. The board also held that work carried out by Hummer before the contracts were made did not amount to a reduction to practice.

On this appeal, Hummer urges that the board erred in not holding that the precontractual work amounted to a reduction to practice. Hummer also urges that, assuming arguendo no actual reduction to practice occurred until the ATS–1 satellite was placed in orbit, the circumstances surrounding this case are not such that NASA should acquire title to the patent. It is contended that, if the invention was first reduced to practice at the time the ATS–1 went into orbit, the invention was not " * * * made in the performance of any work under any contract of the Administration * * *," as required by section 305(a).

### OPINION

*The Alleged Precontractual Reduction To Practice.*

▮ It is the inventor's burden to establish those facts which demonstrate that an actual reduction to practice of an invention occurred prior to the making of a contract out of which rights to a patent on the invention might accrue to the United States as provided in section 305. See Williams v. Administrator of NASA, 463 F.2d 1391, 59 CCPA 1329 (1972).

In the instant case, the facts upon which the board held that Hummer had failed to establish a precontractual reduction to practice are not in dispute. The record reveals that on May 13, 1964 NASA contracted with the Hughes Aircraft Co. (Hughes) to build five spacecraft of a type to be known as the Advanced Technological Satellite (ATS). The ATS–1 satellite, whose flight was regarded by the board to have resulted in the first actual reduction to practice of the invention, was fabricated under this contract, NAS 5–3283.

The ATS spacecraft were referred to as "bus" satellites, since they were to carry diverse experimental packages which were to be furnished by NASA. The camera arrangement involved in this case was one of those packages.

Professor Verner Suomi of the University of Wisconsin attempted to get a contract from NASA to provide a spin scan camera for an ATS spacecraft. His initial proposal was rejected by NASA. Before making another proposal, he sought assistance from Santa Barbara Research Center (SBRC).

Discussions between Suomi and officials of Hughes and SBRC resulted in the design and construction by Hummer and Upton of a camera arrangement which they now regard as a prototype of the claimed invention. This arrangement was demonstrated to Suomi in June or July 1965 and became the basis for another proposal by Suomi to NASA, as well as for one to the Weather Bureau. A contract, NAS 5–9677, was made between the University of Wisconsin and NASA entitled "Spin Scan Camera System Experiment for Applications Technology" and dated September 30, 1965.

The only question raised with respect to the operation of the prototype arrangement is whether the arrangement used met all the limitations of the claims. If so, its successful operation qualified as an actual reduction to practice. In this regard, it is pertinent to point out at this time that the board held that the claims do not require that the camera be mounted in a satellite or be in space but that they do require, as

a material limitation, the rotating body as well as the camera arrangement itself.

The camera arrangement that was successfully demonstrated at SBRC by making photographs of nearby terrain employed a telescope and vertical stepping mechanism like that which would provide north-to-south scanning in actual satellite operation. However, the telescope was not mounted on a body in such a way that lateral, or horizontal line, scanning was achieved by rotating the body and, therefore, the telescope. Instead, the telescope was fixedly mounted and directed away from the scene itself. A rotating mirror was placed so that as it rotated it would reflect a line segment of the scene into the telescope.

From the record, it appears that at no time prior to its use in the ATS–1 was the camera arrangement made a part of a rotating body and operated in such a way that horizontal line scanning was achieved by rotating the body. Nevertheless, the test using a rotating mirror was, and is, regarded by Hummer to be an adequate simulation of the operation of the camera in a satellite or other rotating body. This type of simulation was apparently selected merely because it allowed the use of simpler electronics than would be required were the camera rotated.

As indicated above, the board held that the claim required the camera arrangement in combination with the rotating body and that the operation of the prototype could not, therefore, amount to a reduction to practice. Hummer argues that this amounts to reading into the claim a limitation that is not recited. He urges that the claim merely requires a camera arrangement *adapted* for use in a rotating body. In this regard, see In re Dean, 291 F.2d 947, 48 CCPA 1072 (1961).

In support of its position, the board pointed to various parts of claim 1 that in its view indicate that the rotating body is a limitation. It particularly felt that the recitation of " * * * pivot means mounting the camera to the body * * * " positively includes the body as part of the claimed invention by tying the camera to it.

■■ To constitute an actual reduction to practice, the device demonstrated must include every limitation of the claim. See Fredkin v. Irasek, 397 F.2d 342, 55 CCPA 1302 (1968). In the instant case, the device tested at SBRC failed to satisfy all the limitations of the claims in question. We believe the facts of this case distinguish it from *Dean* and agree with the board's conclusion that the claimed invention includes a rotating body. Had it been appellants' intent to indicate otherwise, it would have been simple enough to do so.

Were there any question about the board's interpretation of the claims, we believe it is resolved by representations made to the Patent Office during the prosecution of the instant application. In the remarks accompanying an amendment of the claims, the claims defining the invention were distinguished from prior art relied upon by the examiner on the ground that " * * * they [the applicants] specifically require, in the base claims, a flying vehicle having a rotating type body * * * ".[2]

Appellee contends that this representation amounts to file wrapper estoppel. At the very least it is an admission by appellants which is relevant to interpreting the claims. Having made this statement to obtain allowance of these claims, appellants' attempt to deny its effect when it is against their interest is not lightly to be accepted. See In re Ruff, 265 F.2d 590, 45 CCPA 1037 (1958).

2. The preamble of original claim 1 recited " * * * adapted for use in a satellite having a rotating gyroscopic type body * * * ." Relevant remarks accompanying a second amendment that, inter alia, deleted "satellite having a" and "gyroscopic type" were that the preamble as amended "is indeed the equivalent or more specific than the original language." Similar language was also deleted from claim 4 by the same amendment.

Apart from the tests with the nonrotating prototype, appellants do not allege any other precontractual reduction to practice. In view of the fact that we find ourselves in agreement with the board on the inadequacy of the tests done on the prototype, we hold that the first reduction to practice of the claimed invention came when the ATS–1 satellite was successfully orbited and transmitted electronic signals to earth from which photographs were made.

### NASA'S Right To The Invention

Appellants' principal argument urging that we hold that NASA is not entitled to the patent which will issue from their application is based upon an interpretation of § 305(a), where it indicates that an invention shall be the property of the United States if " * * * made in the performance of any work under any contract of the Administration * * *." They argue that the effect of this language in the total context of § 305(a) means that the event of a first actual reduction to practice creates a right in the United States to title to the invention only if that reduction to practice is accomplished during the life of a contract with NASA by efforts of the inventors themselves or persons acting on their behalf.

To factually support their legal argument, appellants point out that the SBRC subcontract under the University of Wisconsin's prime contract with NASA terminated when the camera arrangement was delivered. Furthermore, the NASA contract with Hughes called only for the fabrication of ATS spacecraft. Hughes personnel did not participate in the launch or operation of those spacecraft under any contract with NASA. They also point out that there is nothing in the record to indicate that NASA had a contract with anyone to launch or operate the ATS–1. It would follow from these facts that no right in the United States arose under § 305 because the reduction to practice was not one " * * * made in the performance of any work under any contract of the Administration * * *."

Appellants' is an unacceptably strained interpretation of § 305. To accept it would be to restrict the statute in a way which would defeat the intent of Congress. We have no doubt that there are many instances when NASA will contract for the development of hardware under circumstances where the contractor's obligation will end with the delivery of the item to NASA. In at least some of those instances, the reduction to practice of this hardware would be carried out by NASA itself or by other persons not in privity with the inventor. We think that § 305 should be construed to extend to those situations.

We are satisfied that this construction of the statute is in accord with Congressional intent as indicated in the legislative history to the National Aeronautics and Space Act. In the House Report, submitted by the Select Committee on Astronautics and Space Exploration, the following appears: [3]

Subsection (a) [of § 305] provides that title to inventions and discoveries *made* pursuant to or *as the result* of contracts with the Administration shall become the property of the United States * * *. [Emphasis ours.]

It is our view, therefore, that when an invention is developed under contract with NASA and subsequently reduced to practice outside the contract, the invention can be considered to have been made *as the result* of the contract.

Notwithstanding our interpretation of the statute adversely to appellants on this point, it is the burden of NASA to show that it is entitled to receive the title to the invention. Williams v. Administrator of NASA, supra. In the instant proceeding, we think that a prima facie case on behalf of NASA has been made in view of the fact that the camera arrangement used in the first actual reduction to practice was

3. 1958 U.S.Code Cong. and Admin.News, p. 3198.

built under a subcontract to NASA's contract with the University of Wisconsin. That NASA can claim title to inventions developed under subcontracts is made clear by the definition of "contract" appearing in § 305(j)(2), which is reproduced supra.

█ Appellants make one other argument of substance disputing NASA's right to title to the invention. Briefly stated, that argument is that NASA did not contract or pay for any "inventing" under the subcontract between SBRC and the University of Wisconsin. All it paid for was the mere manufacture of an already designed camera. In appellants' words, "NASA merely purchased a copy of an already existing device, a device so thoroughly tested it had the reliability of an off the shelf item."

The substance of this argument lies in the nature of the subcontract. That contract was to be performed in two parts. SBRC was to be paid by the University of Wisconsin for work under each part from two different funds. Work under the first part was paid for with funds from a Weather Bureau Grant, whereas NASA was the source of the funds for the second part.

The scope of work to be performed by SBRC was set forth in a document entitled "Statement of Work and Performance Schedule For Spin-Scan Cloud Camera Program," which was drawn up prior to, but incorporated by reference into, the subcontract. According to the statement of work, SBRC is required in the first part to " * * * design, fabricate, assemble and functionally test one spin-scan cloud camera." Part two, however, requires SBRC to merely " * * * fabricate, assemble and functionally test one flight model spin-scan camera identical to the prototype fabricated under Part I * * *."

It is appellants' contention that any "inventing" under their contract with the University of Wisconsin would have come under Part I, which speaks of "design" work. Thus, if they are not entitled to the patent, it should go to the University of Wisconsin or the Weather Bureau, who paid for the design, rather than to NASA.

However, we are not persuaded by this argument since the claimed invention is not the camera arrangement alone. As we have already indicated, the claims require the camera arrangement in combination with a rotating body.

Insofar as the record reveals, the only use of the Weather Bureau camera was to install it on a prototype satellite that was never launched. The contract between SBRC and the University of Wisconsin requires that SBRC report to the Weather Bureau only those inventions conceived or first reduced to practice under Part I. Neither of those conditions was met. Furthermore, the only reduction to practice of the invention came as a result of a risk taken by NASA by including the camera arrangement in a satellite launched by it. Despite the fact that nonspace uses of the claimed invention are alluded to in the record, no practical use of the camera or the camera arrangement as claimed, other than the use by NASA, has been demonstrated.

In view of all the foregoing, we hold that § 305 requires that title to the invention go to the Administrator of NASA on behalf of the United States. Accordingly, the decision of the board is affirm.

Affirmed.

LANE, Judge (dissenting).

I dissent from the majority opinion because I believe that the claim terminology "adapted for use in a rotating body" does not recite a rotating body as an element of the combination claimed. See In re Dean, 291 F.2d 947, 48 CCPA 1072 (1961). In that case, this court interpreted the words "adapted to be individually coupled to said [shutter-actuating] elements" in element [1] as follows (291 F.2d at 951, 48 CCPA at 1078):

   * * * To state mere *adaptability* of these parts of the timer to perform

the coupling function does not import into the claim the shutter to which they are coupled. The above clause is a limitation of element [1] but not an inclusion of shutter elements.

The board's holding that the claims require, as a *material* limitation, a rotating body as well as the camera arrangement itself, and the court's adoption of this interpretation are, in my view, erroneous. I also believe that the laboratory tests made by Hummer and Upton at SBRC of the "camera arrangement adapted for use in a rotating body" were sufficient to show that the claimed combination operated in the intended way.