55 CCPA

**Simon S. KAHN, Appellant,**

v.

**Harvey F. PHIPARD, Jr., Appellee.**

**Patent Appeal No. 7979.**

United States Court of Customs and Patent Appeals.

June 27, 1968.

Curtis F. Prangley, David A. Vogel, Douglas O. Baird, Prangley, Baird, Clayton, Miller & Vogel, Chicago, Ill. (John B. Armentrout, Washington, D.C., of counsel), for appellant.

Richard R. Trexler, Olson, Trexler, Wolters & Bushnell, Chicago, Ill. (Elmer Buckhorn, Buckhorn, Blore, Klarquist & Sparkman, Portland, Ore., Charles L. Sturtevant, Washington, D.C., of counsel), for appellee.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND and KIRKPATRICK[*], Judges.

SMITH, Judge.

The Board of Patent Interferences[1] awarded priority of invention to Phipard in Interference No. 93,370 [2] and Kahn appeals. No testimony was taken by either party. The board awarded priority to Phipard as the senior party in view of his effective 1960 filing date.

While several issues are raised on this appeal, the determinative issue is whether Phipard was properly given the benefit of his filing date. An ancillary issue is also raised by Kahn who contends the award of priority is void because it was made by a board which was illegally constituted by reason of its including an *acting* examiner of interferences. Other issues which were raised by Kahn but which we do not regard as providing a basis for reversal are, broadly stated, that Phipard is estopped to contest priority, that it was improper to fail to set a new motion period after the present counts were substituted in the interference,[3] and that it was error for the examiner to shift the burden of proof.

The invention in issue relates to a self-tapping screw with swaging protuberances on its work-entering end to facilitate the formation of a thread on the work piece. Count 3 of the interference is drawn to the article and count 4 to a process for making that article. The

[*] Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Casanova and Crews, Examiners of Interferences, and Gaston, Acting Examiner of Interferences, opinion by Crews.

2. The interference involves Kahn application Serial No. 147,535, filed October 25, 1961 and Phipard application Serial No. 172,057, filed February 5, 1962. Phipard is senior party as the result of a decision

by the primary examiner giving him the benefit of the filing date of his copending application Serial No. 6,322, filed February 2, 1960.

3. We note that the board, whose decision we here review, did not rule on the matter of a new motion period either originally or in a decision it rendered in response to a request for reconsideration by Kahn based on other matters.

counts are so similar, insofar as the determinative issue is concerned, that we need consider only count 3 in detail.

An understanding of the invention adequate for present purposes can be gleaned from Figs. 1–3 which appear in the drawings of both Phipard applications,[4] when considered with count 3 which is here reproduced with the addition of bracketed numerical references referring to the parts shown in these figures.

Fig. 1.

Fig. 2.

Fig. 3.

Count 3 reads:

3. A self-tapping fastener [screw 15] including:

(a) a shank portion [17] having an enlarged upset head [16] at one end and a tapered work-entering portion [19] terminating in a tip at the other end,

(b) said shank [17] and work-entering portions [19] being provided with a continuous helical rolled thread formation [20] throughout substantially the full length thereof,

(c) the pitch diameter cross sections of said rolled helical thread formation being of circular shape throughout the full length of said shank [17] and said work-entering end portions [19],

(d) a plurality of circumferentially spaced apart discrete thread forming protuberances [21] expressed from the flanks of the helical thread formation on said working-entering end portion [19] and throughout substantially the full length thereof,

---

4. The Phipard application in interference is designated a continuation-in-part of the 1960 application. It includes figures identical to Figs. 1–12 of the 1960 parent application as well as additional figures and other disclosure.

(e) each of said protuberances [21] in cross section taken in the plane of intersecting said protuberance at the point of greatest offset of said protuberance from the helix of the thread and in a direction at right angles to the thread having a cross sectional boundary line along at least one side thereof extending substantially parallel with and substantially uniformly offset from the flank of the thread immediately forward thereof in the direction toward the tip of said work-entering end portion [19]

(f) the surface of the protuberance [21] on at least the forward side thereof in the direction toward said tip sloping smoothly and gradually from the flank of said thread to said boundary line,

(g) the crests of said protuberances [21] from said tip to said shank [17] increasing in distance progressively radially outwardly from the screw axis and the crest of the protuberance next adjacent the shank portion [17] being substantially the same distance radially outwardly from said axis as the crest of the thread on said shank portion and also substantially the same cross-sectional shape and dimensions.

The applications describe the function of the protuberances 21 as swaging the internal threads in the pilot hole in the work. This is in contrast to known self-tapping screws without such protuberances and in which substantially the full length of the thread performs that function. An advantage inherent in the present structure is a significant reduction of the contact friction during thread cutting.

The interference was originally declared January 30, 1963 with counts 1 and 2 which were generally similar to present counts 3 and 4. At that time Kahn was senior party because his application had the earlier filing date.

During the motion period Phipard moved (1) to amend to add two dependent counts to the interference issue, and

(2) to shift the burden of proof on the basis that he was entitled to be designated the senior party by reason of the earlier filing date of his 1960 application.

Kahn filed a timely motion to dissolve. The motion was directed solely to clause (f) of counts 1 and 2 which then read:

(f) the surface of the protuberance on at least the forward side thereof in the direction toward said tip sloping smoothly and gradually from the flank of said thread to said boundary at *a means* [sic] *angle with respect to the screw axis slightly greater than the angle of the pitch line of the thread with respect to said axis,* [Emphasis added.]

It was Kahn's position on this motion that the recitation in this clause of the emphasized portion prevented either party from making the count, and further that it was "vague, indefinite, confused and misdescriptive."

Phipard then moved to substitute new counts for counts 1 and 2. In the proposed new counts, the recitation in question in clause (f) was shortened by deleting the words "of the pitch line."

Kahn filed briefs in opposition to Phipard's motions, stating with respect to the motion to shift:

* * * the subject-matter of the Interference Counts 1 and 2 simply is not disclosed in the earlier Phipard application *for the same reason that these Counts are not disclosed in the later Phipard application as originally filed in the U.S. Patent Office.* [Emphasis added.]

On June 25, 1964 the primary examiner granted the Kahn motion to dissolve, holding that the language of clause (f) in counts 1 and 2 was indefinite. He also denied Phipard's motions to add the proposed dependent counts and to shift the burden of proof, characterizing the latter as immaterial. In denying Phipard's motion to substitute counts, the examiner observed that the proposed deletion of the phrase "of the pitch line" in clause (f) overcame one of Kahn's

objections to the clause, but held that the retention of the terminology "mean angle" left the language indefinite.

In the same decision, however, the examiner suggested two substitute counts which ultimately became counts 3 and 4 here in issue. These counts are identical in substance to the original counts except that the language in clause (f), relied upon by Kahn in his motion to dissolve, was deleted completely. Clause (f) in former count 1 was thus shortened to read:

(f) the surface of the protuberance on at least the forward side thereof in the direction toward said tip sloping smoothly and gradually from the flank of said thread to said boundary line,

A period of 60 days was set for the parties to make the suggested counts and file preliminary statements with respect thereto.

Both parties filed timely amendments making the suggested counts. At the same time he made the counts, Kahn stated that he was "at a loss" as to why the proposed counts were submitted to Phipard "because of the normal estoppel running against the Junior Party [Phipard]". Phipard, in making the proposed counts, stated that his earlier copending application supported the new counts and requested that he be accorded the benefit of the filing date of that case in the redeclaration of the interference.

On November 16, 1964, the primary examiner rendered a supplemental decision in which he rejected Kahn's assertion of estoppel against Phipard[5] and granted the Phipard motion to shift the burden of proof.

On December 14, 1964, Kahn requested reconsideration of this decision, asserting that the examiner had no right to shift the burden of proof, since the

interference had been dissolved. He also argued for the first time that clause (c) of the new counts was not readable on the disclosure of either party and that clause (g) of the counts did not read on Figs. 1–12 of Phipard's applications. Kahn additionally argued, if clause (g) was interpreted to read on Phipard's Figs. 1–12, that the counts were unpatentable over a patent to Tinnerman.[6] The primary examiner dismissed Kahn's request for the reason that it was not presented within 20 days of the decision as required by Rule 244(c).

On March 19, 1965, the interference was redeclared on the examiner's suggested counts with Phipard designated senior party. On April 8, 1965, Kahn requested reconsideration of the redeclaration of the interference. He requested that a new motion period be set so that he could file a motion to dissolve the interference and also to be made senior party. The interference examiner considered this request as actually seeking review of the primary examiner's decisions of June 25, 1964 and November 16, 1964 and, as such, that it was filed too late.

Kahn then petitioned the Commissioner challenging the refusal of the examiner to set a new motion period. The Commissioner denied this petition, stating:

\* \* \* There has been ample opportunity for Kahn to present and argue his objections to the proposed counts in the form of a timely petition for modification of the Primary Examiner's decision. In this connection attention is directed to Section 1105.07 of the Manual of Patent Examining Procedure which states that any petition for reconsideration, rehearing or modification must be filed within twenty days of the decision. It will be noted that the provisions of this

---

5. As support for his action suggesting the proposed counts, the examiner cited decisions of the Commissioner in Dinkel v. D'Olier, 1904 C.D. 572, 1130 O.G. 2507

(1904); and Anderson v. Vrooman, 1906 C.D. 295, 123 O.G. 2975 (1906).

6. United States patent No. 2,355,486, granted August 8, 1944.

section embrace opposition to the admission of counts.

The Commissioner also said:

> It is noted that petitioner has requested that the party Kahn be accorded the position of senior party. However, this would involve reviewing the November 16, 1964 decision of the Primary Examiner and is therefore dismissed as belated and out of order.

Kahn then filed a "Statement and Motion for Final Hearing," asserting that he had filed a motion to dissolve and opposed the Phipard motion to shift the burden of proof. Phipard followed with a "Motion for Judgment." The patent interference examiner set the case down for final hearing, stating that the Board of Patent Interferences would determine what issues were properly before it.

The board rejected Kahn's position that Phipard was estopped to contest the counts. It stated that every argument advanced by Kahn as to failure of Phipard to support the counts was equally applicable to the original counts and to the counts proposed by Phipard during the motion period and that Kahn never made those arguments until after the decision of the primary examiner. The board, however, did not decide the case on the basis that Kahn was not entitled to raise those matters at final hearing. Instead, it considered the substance of the contentions by Kahn that the counts are not supported by Phipard's 1960 application and held that the counts were supported by that application.

Before us, Kahn remains of the view that Phipard is estopped to contest the counts. On that point, his position is that the examiner's motion decision granting Kahn's motion to dissolve while denying Phipard's motions to amend,

substitute, and shift the burden of proof, terminated the interference with Kahn, the senior party, and invalidated the further proceedings.

The board rejected Kahn's position, stating:

> The proceedings instituted by the original declaration were never suspended. The action of the Examiner in proposing the present counts was in the same paper as the decision on motions and included a notice that failure to assert them would be taken as a disclaimer. There was thus no termination of the contest or any proper basis for the contention by Kahn of estoppel against Phipard.

We agree with the board that the circumstances here do not give rise to an estoppel against Phipard. While we have considered the decisions relied on by Kahn in his brief, including particularly Avery v. Chase, 101 F.2d 205, 26 CCPA 823 (1939) and Moore v. Hignett, 152 USPQ 337 (Comm.Pat.1966), we do not find them to prescribe a contrary conclusion.

Kahn challenges, on what we deem to be the dispositive issue here, whether counts 3 and 4 are supported by the 1960 Phipard application. Specifically, he asserts that certain expressions in (A) clause (c), (B) clause (g), and (C) clauses (e) and (f) are not supported by Phipard's 1960 application. He further asserts (D) that, if count 3 is so construed as to be supported by the application, it is unpatentable over the Tinnerman patent.[7] Phipard points out that those contentions were not raised by motion within the motion period nor by a timely request for reconsideration. He urges that such matters are therefore barred from consideration by Rule 258,[8] as then applicable.

7. See note 6 supra.

8. 258. *Matters considered in determining priority.* (a) In determining priority of invention, the Board of Patent Interferences will consider only priority of invention on the evidence submitted. Questions of patentability of a claim

generally will not be considered in the decision on priority; and neither will the patentability of a claim to an opponent be considered, unless the non-patentability of the claim to the opponent * * * relates to matters which have been determined to be ancillary to priority and must be considered,

The board discussed Kahn's right to argue the matter of support for the counts, stating:

Phipard's contention that Kahn is now estopped to contest Phipard's right to make the counts has more solid substance but we do not consider that our decision should rest on the ground of estoppel. It is true, as asserted by Phipard, that every argument advanced by Kahn as to failure of Phipard alone to support the present counts is equally applicable to the original counts and to the counts proposed by Phipard during the motion period. It is also true that Kahn never made these arguments until after the decision of the Primary Examiner on motions. Kahn did, however, bring a motion to dissolve and he opposed Phipard's motions to amend and shift, and he advanced grounds in support of his positions sufficient to establish their validity in the judgment of the Primary Examiner. Having asserted a sufficient legal basis for his position, should he now be estopped to assert further grounds of attack against Phipard's support of different counts, merely because this further attack could have been made in regard to the original ones?

The question posed was left unanswered by the board. As stated, however, it did not rest its decision on estoppel but instead considered the arguments on the merits, awarding priority to Phipard on the basis of that consideration.

Kahn's contention as to item "A", specifically is that the pitch diameter of the helical thread formation is not of circular shape as stated in clause (c) of the counts because there are a number of protuberances on the formation. However, the description of the formation as of circular shape is immediately modified by the recitation in clause (d) of "a plurality of circumferentially spaced apart discrete thread forming protuberances" stated to be "expressed from the flanks of the helical thread formation." We agree with the board that the latter recitation plainly modifies the questioned description in clause (c) with the result that the two clauses together are plainly applicable to the structure disclosed in the Phipard applications.

Under item (B), Kahn urges that clause (g) is not applicable because of its recitation of the crest of the protuberance next adjacent the shank portion being "*substantially* the same distance radially outwardly from said [screw] axis as the crest of the thread on the shank portion and also *substantially* the same cross-sectional shape and dimensions." [Emphasis added.] Emphasizing that both aspects of the recitation are qualified by the word "substantially" and discussing the disclosure in the applications as to the dimensions of the protuberances or projections, the board concluded that the recitation is supported in the earlier Phipard application and also in the interference applications.

We are satisfied that the board did not err in that conclusion. Clause (g) appeared in the original counts which were suggested from the Phipard interference application. That application states:

* * * the outer tips of the projections do not extend outwardly *substantially* beyond the crest outline of the thread in the main shank although the tips of the projections may extend slightly beyond such crest, such as 2 or 3 thousandths of an inch, to provide a small crest clearance in the main shank when desired, as shown

---

but a party shall not be entitled to raise such nonpatentability unless he has duly presented and prosecuted a motion under rule 232 for dissolution upon such ground or shows good reason why such a motion was not presented and prosecuted.

(b) The matters raised on a motion relating to the burden of proof * * * may be reviewed at final hearing. [Emphasis added.]

in Figs. 2 and 3 and as further explained below.

As mentioned above, each thread-forming projection extends outwardly beyond the flanks and crest of the adjacent intermediate thread formation so as to hold such intermediate thread formation out of contact with the parent body as the tapered work-entering end portion of the screw is driven into the pilot hole. As illustrated in Fig. 3, the flanks of the projection in cross section are substantially parallel to the flanks of the adjacent thread so that the form, or cross-sectional shape, of the projection is *substantially* similar to that of the adjacent thread. The amount that each projection extends beyond the adjacent thread flanks and crest may vary depending upon the amount of cold working to be performed by such projection, the amount of clearance desired, and its proximity to the main shank. However, no projection has an overall thickness at any given distance from the screw axis *substantially* greater than the thickness of the thread in the main shank at the same distance from the screw axis. A projection may be slightly, say a few thousandths of an inch, thicker than the thread in the main shank where a slight clearance is desired in the main shank as well as in the work-entering portion, resulting in a minimum driving torque condition. This condition is shown in the screw of Fig. 1 where the projections extend onto the first thread convolution of the main shank so that the projections thereupon extend slightly beyond the flanks and crests of the threads in the main shank. * * * [Emphasis added.]

That statement indicates that clause (g) is applicable to the screw of Figs. 1–3, which figures we have noted are also included in the 1960 Phipard application. While the above quotation is not included in the latter application, the description therein is consistent with the conclusion that the clause is supported.

The board did not consider Kahn's contention relating to (C), clauses (e) and (f), on the merits. Rather, it stated:

> * * * his argument lacks specificity. We note that the 1960 application is similar to the interfering applications in regard to these limitations and our analysis convinces us that they are fairly supported there. Kahn's position on this point, although not clearly stated in his brief for Final Hearing, is that none of the three applications supports the count, and that it is therefore unpatentable to both parties. This argument is not ancillary to priority (Rule 258). In paper 11, for example, Kahn asserted that "there is absolutely no disclosure anywhere in the Kahn application that hints of this angular relationship."

The argument of Kahn on this point before us is that the clauses "involve precise geometrical relationships among the elements of the thread that are found no place in the Phipard 1960 application." That argument sheds no light on the indefiniteness referred to by the board nor does it take issue with the board's statement that his position is that all of the applications, including Kahn's, do not support the clauses in question. Since it is established that the matter of whether neither application in an interference supports the counts is a question of patentability not ancillary to priority, Ray v. Kronmiller, 167 F.2d 518, 35 CCPA 1085 (1948), there is no basis for finding error in the board's treatment of Kahn's contentions regarding clauses (e) and (f).

Lastly, Kahn's contention that count 3 is unpatentable over the Tinnerman patent, if interpreted to read on the 1960 Phipard application, in its context here, is plainly a contention of unpatentability over the prior art. The board obviously treated it as such for it did not mention the patent in its decision and Kahn did not question that treatment in his request for reconsideration. We likewise may not consider the matter

*for* the reason that patentability is not ancillary to priority. Kleinman v. Steinbach, 187 F.2d 743, 38 CCPA 924 (1951); Glass v. De Roo, 239 F.2d 402, 44 CCPA 723 (1956).

In view of the foregoing, Phipard's contention that his motion for judgment should have been granted becomes moot.

There remains for our further consideration Kahn's argument that the decision of the board is void by reason of an *acting* examiner of interferences being included in the panel. Kahn points out that 35 U.S.C. § 135 states:

> \* \* \* The question of priority of invention shall be determined by a board of patent interferences (consisting of three examiners of interferences) \* \* \*.

He further observes that there is no provision in the statute for *acting* examiners of interferences, although 35 U.S. C. § 7 makes provision for patent examiners having certain specified qualifications to serve as an acting examiner-in-chief on the Board of Appeals. Kahn contends that those circumstances demonstrate that the participation of an acting board member here was illegal. We note that the decision of the board was unanimous. We note further two examiners of interferences here were duly constituted members of the board and their votes alone were sufficient to determine the decision.

Kahn's challenge to the constitution of the board thus is without either practical or legal significance. While 35 U.S. C. § 3 [9] states that the Commissioner, assistant commissioners, and examiners-in-chief shall be appointed "by the President, by and with the advice and consent of the Senate," examiners of interferences are not so appointed. Rather, they fall within the provision of section 3 for "other officers and employees," reading:

> \* \* \* The Secretary of Commerce, upon the nomination of the Commissioner in accordance with law, shall appoint all other officers and employees.

Thus, the present case does not involve any of the significant issues presented in connection with the designation of two acting examiners-in-chief on a panel of three members making up the Board of Appeals involved in In re Weichert, 370 F.2d 927, 54 CCPA 957 (1967).

The decision is affirmed.

Affirmed.

---

**9.** Designated "Officers and employees."