57 CCPA

**Edwin J. SMITH, Appellant,**

v.

**Morris D. STONE, Appellee.**

**Patent Appeal No. 8209.**

United States Court of Customs and Patent Appeals.

Feb. 12, 1970.

Shanley & O'Neil, Washington, D. C., attorneys of record, for appellant; Paul T. O'Neil, Washington, D. C., of counsel.

Robert E. Isner, Keith, Johnston, Isner & Eslinger, New York City, for appellee; Edwin R. Hutchinson, Washington, D. C., Roger M. Rathbun, New York City, of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judge, and MATTHEWS, Senior Judge, United States District Court for District of Columbia, sitting by designation.

BALDWIN, Judge.

This appeal is from the decision of the Patent Office Board of Patent Interferences, adhered to on reconsideration, involving appellant's application [1] and appellee's patent [2] and awarding priority to the senior party, the patentee Stone.

The subject matter involved in the interference relates to the manufacture of tinplate, i. e., thin strips of steel coated with tin, which are used primarily as a fabrication material for containers (the so-called "tin can"). More specifically, the invention pertains to a method of making "very thin tinplate," in which the steel substrate has a thickness in the order of one-half the thickness of the steel substrate of conventional tinplate. Such "ultra-thin" tinplate, is important, according to the patent disclosure, "In view of the fact that normal gauge tinplate * * * is not economically suitable for all phases of the container market."

Claim 3 of the Stone patent, which forms the single count of the interference, reads as follows:

1. In a method of producing very thin tinplate characterized by the fact that when the strip is in a metallurgically soft condition, it is maintained relatively thick, and when in its very thin condition the strip is metallurgically very hard, whereby in both conditions the strip lends itself to ready handling, transferring and processing with minimum losses due to breakage, bending, tearing and the like, and further characterized by the fact that all of the rolling processes are performed prior to the tinning of the strip, the steps including:

cold reducing the strip to a gauge of at least .006 inch and greater which will be relatively thick as compared with the desired final gauge thereof;

continuously annealing the strip while in its relatively thick condition;

cold reducing the soft annealed relatively thick strip at least 30% and greater to its final thin gauge to impart a substantial hardness and strength to the strip,

and as a final step tinning the strip in its thin hard condition.

The issues in this case center around construction of the language of the count and whether appellant's proofs establish conception and reduction to practice of the invention defined by the count.

The patentee Stone relied upon his filing date in the proceedings below. Appellant took testimony and relied upon evidence relating to certain operations performed on two steel coils as proof of both conception and reduction to practice of the invention before Stone's filing date. A complete understanding of the problems associated with this proof requires a further explanation regarding the technology involved.

The method for producing conventional, or standard gauge tinplate, has ap-

---

1. Serial No. 115,008, filed June 5, 1961.

2. No. 3,095,361, issued June 25, 1963, on an application filed February 27, 1961.

parently remained essentially unchanged for over 30 years. It begins with the formation of a steel strip having a thickness roughly ten times the final thickness of standard gauge tinplate, which strip is known as the "hot band" since it is produced on a hot reduction mill. This "hot band" is cleaned and then processed into conventional tinplate by performing the following steps, essentially in the order named:

(1) the band is cold reduced in a single step to the final thickness required;

(2) the cold reduced steel strip produced is then annealed, a process which relieves internal stresses and makes the steel softer and less frangible;

(3) the annealed strip is then tinplated, e. g., by passing it through an electrolytic tinning solution.

The record shows that the annealing step is accomplished conventionally in two different ways; "box" or "batch" annealing, wherein the steel strip, after it has been cold reduced and cleaned, is rolled into coils and heat treated statically for extended periods of time, and "continuous" annealing, wherein the steel is displaced in web form at relatively high speeds through a furnace. While these two methods both produce essentially the same desired end result, i. e., relieved internal stresses and softer and less brittle steel, because of inherent differences in the techniques, the continuous process produces material which is relatively harder than that produced by the box method.

A comparison of the standard method for producing conventional tinplate and the method of the count, indicates two apparent differences: first, the method of the count specifies an additional reducing step to be performed after annealing and before tinning and, second, the method of the count specifies that the annealing be "continuous." This, then, is appellant's problem. It seems that the only evidence submitted by appellant which would antedate the filing date of Stone's patent related to a method in which *box* annealing was carried out.

The evidence supports all other elements of the count. The issue reduces then to whether the word "continuously" in the count may be disregarded.

The board awarded priority to Stone after concluding that the word "continuously" has meaning in the count and must be given effect. Accepting appellant's assertion as true "that conventional annealing may be either 'box' or 'continuous' ", the board nevertheless concluded:

\* \* \* However the record indicates that all of the individual steps of the method of the count were more or less conventional at the time the invention was made. The invention resides in the total method described. It appears that if Stone (whom Smith has acknowledged to be an expert in this field) considered the manner of annealing immaterial he would not have limited his claim to "continuous" annealing.

Appellant strenuously asserts here, as he did below, that the word "continuously" in the count should be ignored in a determination regarding reduction to practice of the "common invention disclosed by the parties." He maintains that the evidence produced in his behalf, coupled with certain alleged admissions of the party Stone, confirms the fact that the "gist" of the common invention defined by the count does not require a specific process for effecting the annealing of the strip. Thus, he argues, the "gist of the invention" test, as set forth in this court's opinion in Hall v. Taylor, 332 F.2d 844, 51 CCPA 1420 (1964), should be used in determining whether reduction to practice of the common invention has been proved.

We have concluded, as did the board, that appellant's reliance on the "gist of the invention" test is misplaced. In the *Hall* case we held that such test is the "key to determining whether a *disclosure supports a claim* for interference purposes \* \* \*." 332 F.2d at 848, 51 CCPA at 1424 (emphasis added). It was not intended, and the opinion did not imply, that, in determining the adequacy of

proof of an actual reduction to practice, recited limitations defining elements of the invention covered by the claim, may be disregarded. Rather it was stated that "all limitations of a claim must be considered." *ibid.* The fact that a limitation is not critical in practicing the broad invention allegedly disclosed will not be controlling in determining a party's right · to make a specific count. Storchheim v. Daugherty, 410 F.2d 1393, 56 CCPA 1147. Neither will it be considered in evaluating his proofs. We agree with the board that what Smith is trying to assert as proof of reduction to practice of the invention defined by the count amounts to proof of an equivalent process. This has long been held to be insufficient in interference proceedings. Martin v. Snyder, 214 F.2d 177, 41 CCPA 1010 (1954).

There remains the assessment of costs for printing additions to the record as requested by the appellee. Since we have found it necessary to consider the additional material in coming to our decision, such costs are assessed against appellant.

The decision of the Board of Patent Interferences is affirmed.

Affirmed.