**Andrew G. SZEKELY, Appellant,**

v.

**Arnold METCALF and Willis Bateman, Appellees.**

**Patent Appeal No. 8655.**

United States Court of Customs and Patent Appeals.

March 16, 1972.

Lawrence G. Kastriner, Harrie M. Humphreys, New York City, attys. of record, for appellant; Paul A. Rose, Washington, D. C., of counsel.

Joseph F. Brisebois, Washington, D. C. (Holcombe, Wetherill & Briesbois), Washington, D. C., attys. of record, for appellees.

Before RICH, ALMOND, BALDWIN, and LANE, Judges and ROSENSTEIN, Judge, United States Customs Court, sitting by designation.

LANE, Judge.

This appeal is from the decision of the Board of Patent Interferences awarding priority of invention of the two counts in issue to the senior party Metcalf et al. which took no testimony and rested on the January 13, 1964, filing date of its United States application.[1] Appellant is involved on his application[2] filed March 31, 1964. As junior party, appellant bore the burden of proving priority by a preponderance of the evidence and attempted to carry it by proving conception and actual reduction to practice as of July 18, 1963, the date on which certain experiments were run. The board found the evidence insufficient, and the sole issue before us is whether these experiments represented a reduction to practice of an embodiment encompassed by the counts. We agree that they do not and affirm the board's decision.

The two counts in issue are drawn to an improvement in the process of refining molten iron in the course of preparing steel. During refinement, an oxygen stream is blown onto the molten iron for the purpose of reducing the carbon content of the metal. A side effect of the process is the formation of iron oxide fumes which escape into and pollute the atmosphere. It was found that the formation of these undesirable fumes could be suppressed by the introduction of a nongaseous fluidized fuel,

---

1. Serial No. 337,355. Appellees sought the benefit of their earlier filed British provisional application. but the board held them not to be entitled to it, and no issue with respect to that conclusion of the board is before us.

2. Serial No. 356,172.

such as a fuel oil, motor oil, kerosene or other liquid hydrocarbons, along with the oxygen stream throughout the refinement period. This is the salient feature of the invention and is expressed in the counts of the interference which read as follows:

1. In a process for the manufacture of steel which includes the step of refining a molten ferrous metal charge by top blowing it with at least one stream of oxygen, the improvement comprising introducing into said oxygen stream, *continuously throughout said refining step*, a nongaseous fluidized fuel in an amount sufficient to suppress the formation of iron oxide fumes. (Emphasis added.)

2. The process of count 1 wherein the nongaseous fluidized fuel is a liquid hydrocarbon material.

During the course of prosecution of the Szekely application, appellant made of record a patent to Rinesch[3] which discloses the addition of fuel oil to the oxygen stream during refining for the purpose of increasing the heat content of the molten iron. The Rinesch invention was based on the recognition that fuel addition should not be continued throughout the refinement period, but rather should be terminated prior to the end of refinement. In arguing for patentability over this reference, appellant asserted that there was no appreciation that fuel oil addition suppressed the formation of iron oxide fumes and also stated that:

Contrary to the teaching of Rinesch, applicant uses oil for the suppression of fumes *throughout the entire refining period;* that is, from the beginning to the end of the refining step. (Emphasis in original).

Therefore, the recital in the counts to the effect that fuel oil addition should be continuous throughout the refining period is the critical one in that it is upon this limitation that patentability over the prior art rests.

Appellant relies upon certain experimental work performed on July 18, 1963, for his reduction to practice. The board neatly summarized the nature and content of this work in its findings of fact which read in relevant part as follows:

6. Nalbone, a technician at Union Carbide working under the direction of Szekely, on July 18, 1963, according to his testimony and laboratory notebook (Exhibit 1) carried out an experiment in which a metal charge comprising iron and carbon was top blown in a furnace so constructed that the amount of oxygen and fuel oil employed could be measured, fumes could be visually observed and quantitatively measured and samples of the melt could be withdrawn from time to time. By alternately increasing and decreasing the amount of fuel oil fed to the burner it was possible to produce fumes or suppress fumes at will and this was done. Samples of the melt were withdrawn at the beginning and at several different points in the experiment and carbon determinations made. Successive reductions in the carbon were stated to show refining of the melt.

7. The Nalbone laboratory record shows that, after the melting of the charge, at 1:26 oxygen was turned on and fuming resulted. At 1:27 oil was introduced and fuming stopped. At 2:10 fuel oil was cut off for a minute and a half and fuming resulted. Fuel oil was resumed at 2:12 and fuming stopped. Both oxygen and fuel oil were cut off at 2:22 and oxygen resumed at 2:27 with fuming resulting. Oil was resumed at 2:29 and fuming reduced as the quantity of fuel oil fed increased. Fuming during fuel oil injection was noted at 3:17 and absence of fume at 3:38.

8. Thus there were four times during the experiment when fuel oil was not being added (1:26–1:27, 2:10–2:12, 2:27–2:29 and 3:38–3:41). At 1:-

3. U.S. Patent No. 3,234,011, issued February 8, 1966, on an application filed March 21, 1963.

31, 1:54 and 3:17 fumes were present while the fuel oil was turned on.

The board concluded that the experiment represented a single refinement during which fuel oil introduction was not continuous throughout the period and therefore not a process upon which the counts read, pointing out the criticality of the limitation as stressed by appellant himself during prosecution of his application. Moreover, the board noted that whereas the counts call for introduction of an amount of fuel oil sufficient to suppress fume formation throughout the refinement period, there were at least three occasions during the run when fumes evolved indicating an insufficient quantity of fuel oil. Accordingly, the activities of July 18, 1963, were held not to amount to a reduction to practice of a process embodied by the counts.

In urging reversal of the decision of the board, appellant advances one principal contention which he expresses as follows:

> The Board has held that appellant has failed to establish a prior reduction to practice of the counts *only* because his evidence failed to show that he introduced oil into the oxygen stream "continuously throughout the refining period." It is appellant's position that a refining period means any period during which the carbon content of the melt is reduced from a higher level to a lower level. There is no limitation in the counts which requires: (1) any specific quantity of carbon to be removed during the refining period, (2) any specific initial carbon content and (3) any specific final carbon level which must be reached. Nor is there any reason why such limitations should be read into the counts.

> In the course of work carried out on July 18, 1963, liquid hydrocarbon fuel was introduced continuously *throughout several refining periods or steps* and was introduced *in sufficient quantity to suppress the formation of iron oxide fumes*. During each of these periods or steps the carbon content of the melt was lowered and it was therefore refined. (Emphasis in original.)

The board rejected this argument, holding that "only one batch of steel was refined * * * [and] was continuously refined in a single refining step (at no point was heating discontinued) * * *." In addition, the board intimated that this position was inconsistent with that taken by appellant during prosecution of his application when he sought to distinguish over the aforementioned Rinesch patent.

Appellees urge that if one can define the refining step as any period during which oxygen is added while excluding other periods during which oxygen is added, the limitation that the fuel oil be added throughout refinement is rendered meaningless. Indeed, they contend, the counts become unpatentable in view of Rinesch since he too discloses a period during which both oxygen and fuel oil are added even though he also discloses a period in which oxygen, but not fuel oil, is introduced. Appellees also point out that appellant nowhere denies that during the experimental run of July 18, 1963, there were periods during which oxygen was added, i. e., refinement was effected, while fuel oil was not introduced, and the facts indicate that there were several such periods.

## OPINION

We agree with both the position taken by the board and that advanced by appellees. Considering the counts in the perspective of the prior art, i. e., the Rinesch patent, the only rational definition of "refining step" as it is used in the counts is the continuous period during which oxygen is added to effect carbon content reduction. In other words, the period of time during which *oxygen* is continuously introduced frames the period of refinement. It can be seen that so construed, the counts do distinguish over Rinesch since he discloses a period dur-

ing which oxygen is added to the melt, which is thus the refinement period, and during only a portion of that period is fuel added to the oxygen stream. This is the thrust of appellees' argument and meets the mark directly. As recognized by appellees, appellant's construction would do violence to the limitation in the counts.

We view the position taken by appellant with respect to his experimental run to be diametrically opposed to that taken by him during prosecution. Appellant's denial of inconsistency is that and no more. He has offered no basis for reconciling the two. In contending for patentability over Rinesch, appellant must have been of the view that a refinement period is defined by the time period during which oxygen is continuously added for the purpose of refinement. In this appeal, however, he would divorce the time period 2:10 to 2:12, for example, during which oxygen was added but fuel oil was not, from the period 1:27 to 2:10, for example, during which both materials were introduced into the iron melt, on the theory that they represent separate and distinct refinement periods. This despite the fact that oxygen addition, hence refinement, was continuous throughout the span 1:27 to 2:12. Such a contradictory analysis is untenable.

We agree with the board and appellees that under these circumstances it cannot be said that fuel oil was introduced continuously throughout the refinement period during the experiment conducted on July 18, 1963. That experiment was not a reduction to practice of the invention of the counts since to be such, *all* the limitations of the counts would have to be satisfied. See Fredkin v. Irasek, 397 F.2d 342, 55 CCPA 1302 (1968); Schur v. Muller, 372 F.2d 546, 54 CCPA 1095 (1967). This is dispositive of the case before us, and accordingly, we do not reach certain related, but somewhat different, arguments advanced by appellees, nor do we need to consider any other rationale relied upon by the board in finding the experiment not to be a reduction to practice.

The decision of the board awarding priority to the senior party Metcalf et al. is affirmed.

Affirmed.