59 CCPA

**Keith Clark BRINKER and Carl Earle Schweitzer, Appellants,**

v.

**Raymond J. KRAY and Robert W. Stevenson, Appellees.**

**Patent Appeal No. 8734.**

United States Court of Customs and Patent Appeals.

June 1, 1972.

Herbert W. Larson, Earl L. Handley, Wilmington, Del., attorneys of record, for appellants; A. Newton Huff, Wilmington, Del., Gerald A. Hapka, Washington, D. C., of counsel.

Abner Sheffer, New York City, attorney of record, for appellees; Linn I. Grim, New York City, of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and CLARK, Justice (Ret.), United States Supreme Court, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Patent Interferences awarding priority to appellees, Raymond J. Kray and Robert W. Stevenson (Kray). The five counts in issue are modified forms of claims copied by Kray[1] from a patent[2] to appellants, Keith Clark Brinker and Carl Earle Schweitzer (Brinker). By reason of be-

---

1. In application serial No. 367,872 filed May 15, 1964, which refers to its parent application serial No. 860,177 filed December 21, 1959.

2. U.S. Patent No. 3,183,211 issued May 11, 1965 on an application filed July 14, 1961.

ing accorded the December 21, 1959 filing date of the parent application, which is relied upon for constructive reduction to practice, Kray was made the senior party in the interference. The issues on appeal all relate to the sufficiency of Brinker's alleged reduction to practice prior to that date.

The invention in issue involves a process of thermally stabilizing, by end-capping, high molecular weight polyoxymethylene polymer with a compound such as ethylene oxide in the presence of an acid such as boron trifluoride. Count 2 is illustrative of the process, and count 1 is illustrative of the product thereof:

2. A process for stabilizing a polyoxymethylene which comprises reacting in a mildly acidic reaction medium a polyoxymethylene starting material having a molecular weight of at least 10,000 with a compound having the general formula

$$R_1 - \overset{\displaystyle O}{\underset{\displaystyle R_3}{\overset{\displaystyle |}{C}}} - \overset{\displaystyle }{\underset{\displaystyle R_4}{\overset{\displaystyle |}{C}}} - R_2$$

[A5918]

where $R_1$, $R_2$, $R_3$ and $R_4$ are groups selected from the class consisting of hydrogen, alkyl groups of 1–20 carbon atoms, aryl groups of 6–10 carbon atoms, arylalkyl groups of 7–20 carbon atoms, and combinations thereof and recovering a polyoxymethylene having improved thermal stability and a molecular weight of at least 10,000.

1. A thermally stable polyoxymethylene having the formula

$$X - O \left( CH_2 O \right)_{\overline{w}} Y$$

[A5919]

where X is a member of a class consisting of the groups having the formula

$$N \left[ O - \overset{\displaystyle R_1}{\underset{\displaystyle R_3}{\overset{\displaystyle |}{C}}} - \overset{\displaystyle R_2}{\underset{\displaystyle R_4}{\overset{\displaystyle |}{C}}} \right]_{w_1}$$

[A5920]

and alkyl groups of 1–10 carbon atoms, Y is a group having the formula

$$\left[ \overset{\displaystyle R_1}{\underset{\displaystyle R_3}{\overset{\displaystyle |}{C}}} - \overset{\displaystyle R_2}{\underset{\displaystyle R_4}{\overset{\displaystyle |}{C}}} - O \right]_{w_2} H$$

[A5959]

w is a positive integer greater than 300, $w_1$ and $w_2$ are positive integers of 1–20 and $R_1$, $R_2$, $R_3$ and $R_4$ are members selected from the class consisting of hydrogen, alkyl groups of 1–20 carbon atoms, aryl groups of 6–10 carbon atoms and arylalkyl groups of 7–20 carbons atoms.

It appears that uncapped polyoxymethylene is subject to depolymerization, termed unzipping, at high temperatures and also in basic medium. The object of the invention, therefore, is to end-cap the polyoxymethylene polymer so that it is both thermally stable and base stable. In the invention of the counts herein, the end-capping agent is ethylene oxide.

Brinker contends that end-capping of polyoxymethylene with ethylene oxide was accomplished in an experiment al-

legedly carried out on January 16, 1959 and designated "96E" in Dr. Brinker's notebook. Brinker relies on experiment 96E to establish a reduction to practice prior to the December 21, 1959 date accorded Kray, and a large part of the testimony of record deals with that experiment.

The board, after reviewing this testimony, concluded that "96E lacks corroboration" since the "only evidence concerning the essentials of 96E comes from one of the inventors, Brinker." In regard to the testimony of the main corroborating witness, Dr. Vogl, the board stated:

> We are compelled to conclude that Vogl had no way (other than what Brinker told him) of knowing that [what ?] the molecular weight was, or even that the material was raw uncapped polyoxymethylene * * * especially since he believed that the capped polyoxymethylene had the same appearance * * *. Further, we must conclude the Vogl did not have any first hand basis for concluding that the reaction medium was mildly acidic * * * since as to this conclusion, he testified on the basis of what he saw in Exhibit 8, not on what he actually saw at the time the experiment was performed.

In addition, the board found other deficiencies in the Brinker case for reduction to practice, to wit, that the product obtained by Dr. Brinker was never tested for its ability to form molded articles or any other useful purpose and that there is no corroboration of Dr. Brinker's allegation that the base stability measurement, which was necessary to prove successful end-capping, was made.

Appellees not only agree with the board but also contend that there are other deficiencies which the board merely referred to as being "noted by Kray in the brief." According to appellees' brief, these include the fact that the product of the Brinker experiment was not shown to have a high enough molecular weight, that there is no proof that the ethylene oxide reacted with the polyoxymethylene, and that the base stability data is questionable.

We affirm the board's decision since we, too, think there has not been an adequate corroboration of several of the features necessary for Brinker to establish reduction to practice. In particular, we do not think there was a sufficient corroboration of the molecular weight of the polyoxymethylene both before and after the experiment was run. The molecular weight feature is necessary to Brinker's case for reduction to practice since it is an express limitation in the counts.[3]

As to the starting material for experiment 96E, Dr. Brinker testified that he used "Blend KK" which was obtained from the du Pont Company Belle Works. Others of the Brinker witnesses testified that Blend KK was a polyoxymethylene which had at times prior to the experiment in question been analyzed to determine its Extrudate Number and from that it was estimated that its molecular weight was about 40,000–42,000. Still, there is only Dr. Brinker's testimony that Blend KK was used. Dr. Vogl did not see Dr. Brinker remove the starting material from its storage container and did not see him weigh it out. The only things that led Dr. Vogl to conclude that the starting material was a polyoxymethylene having a molecular weight of at least 10,000 were Dr. Brinker's state-

---

3. Count 2 for the process calls for "a polyoxymethylene starting material having a molecular weight of at least 10,000" and for "recovering a polyoxymethylene having * * * a molecular weight of at least 10,000"; likewise, the counts directed to the product call for a thermally stable polyoxymethylene polymer of a given formula wherein "w is a positive integer greater than 300," i. e., a molecular weight greater than 9,000.

ment to him that Blend KK was being used and the fact that he saw a fluffy white powder being worked with when he entered the laboratory. Clearly, there is no direct corroboration of the use of a polyoxymethylene starting material having the requisite molecular weight. We think the board's assessment in that regard sound when it concluded that Dr. Vogl had no way of knowing what the molecular weight was or even that the starting material was raw uncapped polyoxymethylene.

More importantly, there is no direct corroboration of the fact that an end-capped polyoxymethylene having a molecular weight of over 10,000 was recovered from the experiment. Even assuming that it has been established that the polyoxymethylene starting material had a molecular weight of at least 10,000, that does not mean in this case that the end product was also of a high molecular weight. A number of witnesses indicated that polyoxymethylene such as that used in the experiment would be subject to molecular weight degradation if exposed to oxygen, water, peroxide, or too high a boron trifluoride concentration. Under the circumstances, we think it reasonable to question Dr. Brinker's "judgment that it [the molecular weight of the recovered product] was greater than 10,000" and to require some evidence to substantiate that judgment. There is none in this case. At best, there is only Dr. Vogl's corroborating testimony that the recovered product was "fluffy, almost colorless" (i. e., not sintered, not dark tan). However, the absence of sintering does not necessarily mean that the polyoxymethylene product had a molecular weight of at least 10,000. The evidence indicates that the product could have had a molecular weight as low as 3,000 without signs of sintering.

Even applying the rule of reason enunciated in Berry v. Webb, 56 CCPA 1272, 412 F.2d 261 (1969), as appellants urge, we do not think there has been a sufficient corroboration of the fact that an uncapped polyoxymethylene having a molecular weight of at least 10,000 was used as the starting material in experiment 96E and that a capped polyoxymethylene was a molecular weight of at least 10,000 was the product of that experiment. We, therefore, conclude that the board was correct in holding that Brinker's proof of reduction to practice fails for lack of proper corroboration.

The decision of the board is affirmed.

Affirmed.