Judson D. WETMORE, Appellant,

v.

Carl F. QUICK, Appellee.

Patent Appeal No. 75–597.

United States Court of Customs and
Patent Appeals.

June 24, 1976.

938

James W. Geriak, Lyon & Lyon, Douglas E. Olson, William L. Respess, Los Angeles, Cal., attorneys of record, for appellant. William Bullinger, Cushman, Darby & Cushman, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

LANE, Judge.

This is an appeal from the decision of the Patent and Trademark Office Board of Patent Interferences [1] (board) awarding priority of invention to the senior party Quick [2] after finding that the junior party Wetmore had not established a prima facie case which would entitle him to an award of priority as required by 37 CFR 1.204(c). This appeal also seeks review of the decision of the board that it could not review the examiner's decision on a motion to amend the counts of the interference

brought under 37 CFR 1.231(a) because such action was not ancillary to priority. We affirm.

## Background

This is a two-party interference proceeding between senior party Quick's patent No. 3,315,986 [3] for "Means and Methods for Connecting Tubular Conduits" and junior party Wetmore's application serial No. 3,563 [4] for "Self-Heating Articles and Process." Wetmore copied the sole interference count from the Quick patent.

## The Subject Matter of the Count

The subject matter in issue is a heat-shrinkable polytetrafluoroethylene [5] (Teflon) sleeve, i. e., one that when heated will shrink from a relatively large diameter to a relatively small diameter, coated with a pyrotechnical material. In use, an exothermic reaction is initiated in the pyrotechnical material. The heat generated by the reaction causes the sleeve to shrink. The advantage of this sleeve structure over the prior art is the elimination of a separate heating source, which is usually required when heat-shrinkable sleeves are used.

## The Count

The sole count in issue is as follows:

A connecting and repair sleeve for tubular conduits, said sleeve comprising a tubular element formed from heat-shrinkable [poly]tetrafluoroethylene, said tubular element having an original internal perimetral size smaller than the outside perimetral size of the tubular conduit, and being provided on its outer peripheral surface with a coating of pyrotechnical material, said tubular element having been expanded to a size substantially larger than the outside diametral

1. Interference No. 98,164.

2. The party Quick entered no appearance in either this appeal or the proceeding below.

3. Issued April 25, 1967, on application serial No. 365,099, filed May 5, 1964.

4. Filed January 7, 1970; accorded the benefit of serial No. 586,954, filed October 17, 1966.

5. The source for the count is claim 2 of Quick, which recites the sleeve material as "tetrafluoroethylene." Tetrafluoroethylene is a gas, however, which boils at minus 78.4°C. Therefore, the recitation of tetrafluoroethylene in claim 2 of Quick was obviously intended to be polytetrafluoroethylene, as recited in the Quick disclosure.

size of the tubular conduit whereby it can be freely slipped telescopically over said tubular conduit, said coating being applied directly to the outer surface of said tubular element, said coating being of a nature to closely adhere to the outer wall surface of said sleeve within the range of and during contraction of said sleeve, so that said coating remains in continuous contact with the tubular element after it commences to shrink.

## Prior Proceedings

Wetmore sought to initiate this interference in his parent application by filing a preliminary amendment thereto in which he presented claims 25–30. Claims 25–29 were copied from claims 1–5 of the Quick patent. Claim 30 corresponded to copied claim 1, with the omission of what Wetmore regarded as immaterial limitations. Wetmore informed the Patent and Trademark Office that the claims were copied from a patent as required by 37 CFR 1.205(b) (Rule 205(b)), and he also filed affidavits and supporting documents as required by 37 CFR 1.204(c) (Rule 204(c)).

Subsequently, Wetmore filed the present application as a continuation of his parent. Claim 25 of the present application is the interference count and is copied claim 2 of Quick. Claims 26–29 are *similar* to the interference count but are broader in that the preamble language "connecting and repair" is omitted and the material of the sleeve is defined as being either a "heat shrinkable synthetic resin" or as being "selected from the group consisting of polyethylene and polytetrafluoroethylene."

Wetmore again called attention to the fact that his claims 25–29 were either copied from, or similar to, claims of Quick as required by Rule 205(b), and relied on the affidavits and supporting documents filed in the parent application as compliance with Rule 204(c).

The examiner rejected claims 25–29 under 35 U.S.C. § 132 as being drawn to new matter, reasoning that there was no support in the present application for a "connecting and repair sleeve," or for any di-

mensional relationship of the sleeve to a conduit, or for the use of polytetrafluoroethylene as the sleeve material. This rejection was reversed by the Board of Appeals.

Following the Board of Appeals' decision, an interference was declared with only one count in issue, corresponding to Wetmore's claim 25 and Quick's claim 2. Upon the declaration of interference, Wetmore was simultaneously served with an Order to Show Cause under 37 CFR 1.228 (Rule 228) why summary judgment should not be entered against him. The Order to Show Cause stated:

The papers filed by Wetmore are inadequate to show that he is prima facie entitled to an award of priority with respect to the effective filing date of the patentee because of the following reasons;

1.) There is no explanation as to how the conception document supports all of the limitations of the count. Among other things it is noted that exhibit A merely refers to "Thermofit." The corroborating witness does not identify the composition of "Thermofit" but Wetmore's affidavit states that it is "polyethylene." The count however requires *(poly) tetrafluoroethylene.*

2.) The corroboration is insufficient in that Cook does not say when he read exhibit A nor when he observed the experiment. *Kistler v. Weber* 162 USPQ 214;

3.) Insufficient corroborated facts are set forth whereby an actual reduction to practice of the count may be deduced. Insofar as exhibit A is concerned a "Thermofit" sleeve was shrunk but apparently was not shrunk on to anything. Cf. *Schwab et al. v. Pittman* 172 USPQ 59 [sic, 69].

Attention is directed to the provisions of Rule 228 which requires that if any additional affidavits or documents are presented they must be accompanied by a showing is [sic, in] excuse of their omission from the original showing.

In view of the defects noted above, and as provided in Rule 228, the party Wet-

more is hereby notified that summary judgment will be entered against him unless by Jan. 25, 1973 he shows cause why such action should not be taken. Any response to this order must comply with all of the provisions of Rule 228, and must be served on the patentee (Rule 247). [Emphasis in original.]

Thereafter Wetmore filed additional affidavits and documents to augment his Rule 204(c) showing.

The board in a decision dated September 12, 1973, found Wetmore's augmented Rule 204(c) showing inadequate to prima facie establish an actual reduction to practice of the count, for two reasons. First, Wetmore failed to produce any evidence that his tested sleeves were shrunk onto a conduit. Second, Wetmore's only tests with a polytetrafluoroethylene sleeve "were not successful because * * * the material melted or decomposed." However, the board deferred ruling on the Order to Show Cause until the primary examiner had an opportunity to consider a motion to amend or any other motion that might have been presented under 37 CFR 1.231 (Rule 231).

Wetmore then moved to amend the issue in the interference under Rule 231 by adding or substituting new claims 31–35 as counts. Claims 31–35 were broader than the original count in defining the sleeve material as either a "heat shrinkable synthetic resin" or as a "heat shrinkable synthetic resin selected from the group consisting of polyethylene and polytetrafluoroethylene." Claims 31 and 32 additionally omitted language of the count defining the sleeve size in relation to a conduit. Claims 31, 32, 34, and 35 also omitted the language "for tubular conduits" from the count. The examiner held that these proposed broader counts would be unpatentable over the prior art under 35 U.S.C. § 103 and denied entry of Wetmore's amendment. The denial was not appealable (37 CFR 1.244(d), Rule 244(d)).

Wetmore petitioned the Commissioner to direct the addition or substitution of claims 31–35 as the counts of the interference.

This petition was denied, with the suggestion that Wetmore could get review of the examiner's proposed rejection by continuing ex parte prosecution of these claims.

After a decision was rendered on Wetmore's petition to the Commissioner, the board rendered its decision:

On December 12, 1973 Wetmore filed a motion (paper # 17) to amend the interference by adding or substituting one or more of counts A through E [claims 31–35]. This motion was transmitted to the Primary Examiner.

On April 4, 1974 the Primary Examiner denied the motion to amend as to all the proposed counts on the basis that they are not patentable under 35 U.S.C. 103.

On May 6, 1974 Wetmore filed a petition under 37 C.F.R. § 1.181 (paper # 21) requesting the Commissioner to direct the Examiner to add or substitute one of the proposed counts. This petition was denied on September 10, 1974.

Since no broader counts have been added to this interference we reaffirm our decision of September 12, 1973 and incorporate it herein by reference as if fully reproduced. We further note that since a motion to amend is not a question which is ancillary to priority we have no authority to consider it. *Josserand v. Taylor,* 1943 C.D. 710, 721, 59 USPQ 140.

Priority of invention is awarded to Carl F. Quick, the senior party patentee.

## OPINION

Two issues are presented to us in this appeal. First, does Wetmore's evidence submitted under Rule 204(c) show a reduction to practice of the count which would thereby prima facie entitle him to an award of priority with respect to the effective filing date of the Quick patent? Second, is the examiner's decision on Wetmore's motion to amend the issue of the interference ancillary to priority and therefore reviewable by the board?

### *Wetmore's Rule 204(c) Showing*

Wetmore relies on several tests, which occurred prior to Quick's filing date, which

he alleges show a reduction to practice of the count. One test involved wrapping a sleeve of polyethylene with a thin package containing a mixture of ammonium chloride, cupric oxide, iron, and alum chips. After wrapping, the package was taped to form a jacket around the sleeve of polyethylene. Water was then applied to the package and sufficient heat was generated by the ensuing reaction to shrink the sleeve. Other tests involved sleeves made of polyurethane, Kynar,[6] and polyethylene, all coated with various pyrotechnical materials. In some of these tests a successful shrinking of the sleeve was obtained. However, in other tests the sleeve melted or decomposed, apparently because the pyrotechnical coating generated too much heat. Only one test included a polytetrafluoroethylene sleeve. In that test sleeves made of polyethylene, Kynar, and polytetrafluoroethylene were coated with a mixture of road flare material, water, and gum arabic. Subsequent ignition caused each of the sleeves to melt or decompose. Wetmore's evidence shows no tests in which a sleeve was shrunk onto a conduit.

Wetmore argues that, contrary to the finding of the board, an actual reduction to practice does not require that the heat-shrinkable sleeve be shrunk onto a conduit. However, we find the question of whether Wetmore's evidence shows an actual reduction to practice of an invention utilizing a polytetrafluoroethylene sleeve dispositive of this appeal, and we therefore need not consider Wetmore's arguments concerning the shrinking of a sleeve onto a conduit.

Wetmore makes three points in support of his contention that he need not show a successful test with a polytetrafluoroethylene sleeve to show an actual reduction to practice of the count.

Wetmore first argues that the Board of Appeals, in reversing the examiner's new matter rejection of claim 25 (the count in issue), held that Wetmore's application was adequate to support a claim to a polytetrafluoroethylene sleeve, thereby viewing Wetmore's application as a constructive reduc-

tion to practice of the count. Since Wetmore's application contained, as examples, the same tests which are now relied on to show an actual reduction to practice, Wetmore reasons that these tests should be sufficient to establish an actual reduction to practice. He argues that proof of an actual reduction to practice requires no more than that for a constructive reduction to practice, citing *Blicharz v. Hays*, 496 F.2d 603, 608, 181 USPQ 712, 715 (CCPA 1974).

This argument lacks merit. It must be remembered that the rejection before the Board of Appeals was under 35 U.S.C. § 132, which is tantamount to a rejection under 35 U.S.C. § 112, first paragraph, for lack of a written description of the invention. *In re Bowen*, 492 F.2d 859, 181 USPQ 48 (CCPA 1974). See also *In re Winkhaus*, 527 F.2d 637, 188 USPQ 129 (CCPA 1975). As such, the Board of Appeals reviewed Wetmore's specification to ascertain whether there was a written description for the claim corresponding to the count in issue. It could be argued that implicit in the decision of the Board of Appeals was a finding of an enabling disclosure for the claims. However, an actual reduction to practice requires a showing of an embodiment of the invention in a physical or tangible form which shows every element of the invention defined in the count, and which demonstrates the utility of the invention. Therefore, while Wetmore's disclosure, directed as it is to one skilled in the art, might describe the invention embodied in the count and enable one skilled in the art to practice the same, the same tests referred to in the disclosure may nevertheless be insufficient to establish an actual reduction to practice of the count. *Blicharz v. Hays*, supra, does not support the broad proposition that proof of actual reduction to practice requires no more than for a constructive reduction to practice. *Blicharz* merely states that a party in an interference who relies on his application as a constructive reduction to practice is not in a favorable position to urge that his oppo-

6. Kynar is a trademark for polyvinylidene fluoride.

nent's proofs of actual reduction to practice must show a *greater utility* than the specification relied on discloses.

█ Moreover, even if the decision of the Board of Appeals could be construed as having some bearing on the issues before us, it is well settled that ex parte decisions by the Board of Appeals are not controlling on issues to be decided by the Board of Patent Interferences. *Sze v. Bloch,* 458 F.2d 137, 59 CCPA 983, 173 USPQ 498 (1972).

Wetmore's second point is that the successful shrinking of a polyethylene sleeve amounts to an actual reduction to practice of a polytetrafluoroethylene sleeve because the evidence of record indicates that it was well known at the time of the tests that both polyethylene and polytetrafluoroethylene were equivalent materials insofar as their ability to heat-shrink was concerned. Wetmore reasons that one skilled in the art, given the conception by Wetmore that a polytetrafluoroethylene sleeve lay within the scope of his invention, would conclude from the successful tests with polyethylene that success would result with a polytetrafluoroethylene sleeve.

█ Assuming arguendo that the "equivalence" between polyethylene and polytetrafluoroethylene heat-shrinkable sleeves alleged by Wetmore is true, nevertheless, it is settled that a prima facie case under Rule 204(c) must be shown for *all* limitations present in the count. *Golota v. Strom,* 489 F.2d 1287, 180 USPQ 396 (CCPA 1974). It is also settled that an actual reduction to practice must show every express limitation of the count. *Hummer v. National Aeronautics & Space Administration,* 500 F.2d 1383, 183 USPQ 45 (CCPA 1974); *Szekely v. Metcalf,* 455 F.2d 1393, 59 CCPA 893, 173 USPQ 116 (1972); *Brinker v. Kray,* 460 F.2d 1073, 59 CCPA 1047, 173 USPQ 803 (1972); *Fredkin v. Irasek,* 397 F.2d 342, 55 CCPA 1302, 158 USPQ 280 (1968). The count before us recites "polytetrafluoroethylene," not "polyethylene." The only test performed with a polytetrafluoroethylene sleeve resulted in the decomposition of the sleeve. Therefore, although a successful test of a polyethylene sleeve demonstrated the principle of operation of the invention, nevertheless, the evidence of record fails to show a successful reduction to practice of the subject matter defined by the count. See *Jepson v. Egly,* 231 F.2d 947, 43 CCPA 853, 109 USPQ 354 (1956). As we have said before, proof of reduction to practice of an invention equivalent to that defined in the count is insufficient to support an award of priority of the count. *Smith v. Stone,* 420 F.2d 1065, 57 CCPA 884, 164 USPQ 453 (1970).

As his third point Wetmore argues that this court has in the past recognized that priority with respect to a count in which a chemical genus is recited can be shown by a reduction to practice of a single species within the genus. He then argues that there is a generic invention involved in this interference, namely, a synthetic resin heat-shrinkable sleeve coated with a pyrotechnical material, and that he has shown a reduction to practice of a species within the genus. He thus reasons that he is entitled to proceed in a priority contest with regard to the present count "because he has shown a sufficient reduction to practice to support a holding of priority with respect to it."

█ However, the count before us contains no generic invention directed to synthetic resins broadly, but rather a specific invention involving polytetrafluoroethylene alone. Wetmore's arguments, in effect, would require this court to rewrite the count. This we will not do.

█ Finally, we note Wetmore's contention that should this court rule that his proofs submitted under Rule 204(c) fail to establish an actual reduction to practice of the precise subject matter defined by the count, the decision of the board should, nevertheless, be reversed because the differences between the subject matter defined by the count and that actually reduced to practice are obvious. Wetmore argues from *In re Spiller,* 500 F.2d 1170, 182 USPQ 614 (CCPA 1974), and *In re Dardick,* 496 F.2d 1234, 181 USPQ 834 (CCPA 1974), that this court should hold that evidence directed to a reduction to practice of sub-

ject matter outside an interference count can support a holding of priority in those instances where the party relying on that evidence can demonstrate conception of the subject matter of the count, and the differences between the subject matter defined by the count and the subject matter reduced to practice are obvious ones. Wetmore's novel argument, which is contrary to established interference law, is based on the law set out in cases decided by this court regarding what is required in a Rule 131 affidavit to antedate a reference. We can dispose of this argument rather easily. The law developed in our Rule 131 cases has little bearing on the law relating to interference practice. We noted in particular in *In re Moore,* 444 F.2d 572, 58 CCPA 1340, 170 USPQ 260 (1971), that there are certain basic distinctions between an interference proceeding and an ex parte proceeding. As a result, in an ex parte proceeding, one may antedate a reference by a showing which is less than that which would be required for a party to win a priority contest.

In view of the foregoing, we find no error in the decision of the board holding that Wetmore's Rule 204(c) showing was insufficient to prima facie entitle him to an award of priority.

### Wetmore's Motion to Amend

Wetmore urges that we ignore the provisions of Rule 244(d) and the familiar rubric that motions to amend are not ancillary to priority. He argues that in substance a motion which simply attempts to modify the count without creating a material change for the purpose of conforming the count to the moving party's best proofs is quite clearly ancillary to priority because it will have a direct impact on, at least, the burden of proof and, at most, the admissibility of evidence with regard to proving priority.

We note that the familiar rubric which Wetmore refers to has basis in decisional law. In *Josserand v. Taylor,* 138 F.2d 58, 65, 31 CCPA 709, 720, 59 USPQ 140, 147 (1943) this court said:

> A motion to amend an interference, under rule 109 [a predecessor to Rule 231], *supra,* is an interlocutory motion, and merely presents the question as to whether or not the interference shall be redeclared. It does not, when denied, relate to the issue of priority of invention of the count or counts involved in the interference, and neither the Board of Interference Examiners, nor, on appeal, this court, has authority to review and determine that issue. [Citations omitted.]

We see no compelling reason to question this rationale in view of the facts in this case. It will be remembered that Wetmore's proposed counts were found to be unpatentable by the examiner over certain prior art references. Therefore, the examiner's decision on the motion to amend was grounded on patentability, which is not ancillary to priority,[7] and thus the decision is not subject to review by the board or this court.

Accordingly, the decision of the board is *affirmed.*

*AFFIRMED.*

---

7. *Kahn v. Phipard,* 397 F.2d 995, 55 CCPA 1284, 158 USPQ 269 (1968).