Frederick T. FITCH and Ann B. Braun,
Appellants,

v.

The ATOMIC ENERGY COMMISSION,
Appellee.

Patent Appeal No. 9124.

United States Court of Customs
and Patent Appeals.

Feb. 28, 1974.

Rehearing Denied April 18, 1974.

George T. Mobille, George M. Sirilla, Washington, D. C. (Cushman, Darby & Cushman) Washington, D. C. attorneys of record, for appellants. Joseph P. Nigon, Clarksville, Md., for W. R. Grace & Co., of counsel.

J. A. Horan, Washington, D. C., for the Commissioner of Patents.

Randall G. Erdley, Washington, D. C., for U. S. Atomic Energy Commn.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MARKEY, Chief Judge.

This appeal is from the decision of the Board of Patent Interferences holding that the Atomic Energy Commission (AEC) is entitled under 42 U.S.C. § 2182 to the patent to be issued on application serial No. 635,662, filed May 3,

1967 by Fitch et al.,[1] for "Microspheres of Urania and Other Materials." [2] We reverse that decision, finding that the invention of the application was not "made or conceived in the course of or under any contract, subcontract, or arrangement entered into with or for the benefit of the Commission," as would be required to vest patent rights in the AEC under Section 152 of the Atomic Energy Act of 1954, as amended (42 U. S.C. § 2182).

### The Invention

The invention relates to dense, sintered microspheres of urania or other oxides of the actinide metals having a diameter in the range of 5 to 500 microns. The microspheres are dried colloidal residues, prepared from liquid dispersions of colloidal particles known as "sols," and are useful in the production of nuclear fuel elements.

### The Decision of the Board

The following findings of fact were made by the board and are not disputed here:

(1) "The contracts involved are a subcontract (AT–143) [3] between the General Electric Company (GE) and W. R. Grace & Company (Grace) * * * and a contract (AT(30–1)–2884) between Grace and AEC."

(2) AT–143 was "in effect from June 3, 1960 to June 3, 1961" and AT–2884 ran from November 1, 1961 to December 31, 1963.

(3) The "claimed subject matter clearly comes within the terms" of AT–143, the Grace proposal which was incorporated by reference into the contract specifically including the preparation of sperical urania particles in the range of 0.1 to 10 microns.

(4) The preparation of the claimed subject matter was not included or intended to be included within the provisions of AT–2884, there being "no mention of any production of microspheres above the colloidal range." [4]

(5) The evidence is "inadequate to establish" conception of the invention in the period beginning with expiration of AT–143 and ending prior to the effective date of AT–2884, but at most establishes conception "by December of 1961 or sometime thereafter."

(6) The "only evidence of a sol used in the production of microspheres indicates that said sol was produced by AEC funds under AT–143."

Further evidence which apparently played a part in the board's decision but which has not been acknowledged by appellants was found to indicate "some commingling of AEC and Grace work, at least as far as record keeping" is concerned and thus to raise the "unresolved question of whether or not AEC funds were used, either directly or indirectly, for Grace projects."

From the findings the board concluded:

[I]n view of all the circumstances involved, including Grace's knowledge of the AEC interest in the microspheres in the supermicron range, the original subcontract to produce same, the use of material produced under the subcontract to prepare the microspheres, we find that Grace has not carried their burden of proving the microsphere work was not so related to that required under the contracts so as to negate the AEC's right to the patent. In view of the evidence of record it would not be unreasonable to assume that the sols prepared under AT–143 and/or AT–2884 were used, at least to some degree, in the subsequent production of the claimed microspheres. Accordingly, if the contract sols had

---

1. A continuation-in-part of serial No. 305,828, filed August 20, 1963 and serial No. 192,088, filed May 3, 1962.

2. Assigned to W. R. Grace and Company.

3. The prime contract was between GE and AEC (AT(11–1)–171).

4. Although not acknowledged in appellee's brief this fact was conceded to be true by appellee's attorney at oral hearing.

been used, and the record indicates that they were used in December of 1961, then any complete conception of the invention as claimed could be considered to have been made in the course of or under the contracts in issue, specifically AT–2884. Grace has submitted no evidence that the contract sols were not so used and it is their burden to do so. * * *

On reconsideration, the board clarified its holding by stating:

* * * [O]ur decision is not solely dependent upon the use of the 779–1 sol but is rather based upon "all the circumstances involved" * * *. Consequently, on the facts before us, even if it were determined that the contract sols were not or did not have to be used in the preparation of the microspheres, our decision would remain unaltered insofar as it holds that AEC to be entitled to have the patent issued to them.

### Appellants' Position

Appellants have no quarrel with the findings that the claimed microspheres were not conceived or made until December of 1961, a date falling within the effective period of AT–2884. Nor do they deny that a sol left over from work on AT–143 was used. They do contend that in view of the intended scope of the work under AT–2884 the preparation of the microspheres could not properly be adjudged as work done "in the course of or under" that contract, the only one then in existence. The proposed work of AT–143 would admittedly encompass microsphere preparation, but that contract had been terminated in June of 1961 without fulfillment of the microsphere aspects of the research and thus, it is urged, could have no bearing on the allocation of ownership of the later invention.

### Appellee's Position

Appellee maintains that the microspheres were in fact conceived "in the course of" AT–2884. Although conced-

ing that the microsphere work did not fall under the specific terms of the AEC contract or within the activity contracted for thereby, the Commission argues that such a qualification is not necessary. That the conception occurred in the time period of contract AT–2884 and was related to the proposed work thereof is urged to be such a sufficient basis for establishing the requisite nexus between invention and contract as to secure AEC patent rights under the circumstances of this case. AT–143 is relied upon to establish the interrelationship of microspheres and colloidal sols as coexistent interests of the AEC in the field of nuclear fuel materials. The specific continuation of the colloidal sol aspects of this work in AT–2884 is urged to be adequate to preserve the viability of the AEC interest in developments encompassed by the broader scope of AT–143. The alleged commingling of records of AEC and Grace work and the admitted use of an AT–143 sol in the preparation of the microspheres are set forth as further evidence dictating the board's conclusion. It is appellee's position that the burden of proof had passed to Grace to establish conception independent of the AEC project and that that burden had not been carried.

### OPINION

■ We do not agree that the AEC has sustained its burden of proving conception "in the course of or under" contract AT–2884. See Williams v. Administrator of NASA, 463 F.2d 1391, 59 CCPA 1329 (1972). It is undisputed that there were no provisions in AT–2884 directed to or envisaging preparation of the claimed microspheres. The information respecting the nature of the invention and the terms of the contract was fully known to both parties.

■ The board erred in holding " * * *, we find that Grace has not carried their burden of proving the microsphere work was not so related to that required under the *contracts* so as to negate the AEC's right to the pat-

ent." [Emphasis ours] The error was compound. The burden of going forward, absent a prima facie establishment by AEC that the invention was conceived in the course of or under AT–2884, was not on Grace. Moreover, the commingling of AT–143 and AT–2884 under "contracts" was clear error. AT–143 expired prior to conception of the invention. Its terms were irrelevant. AEC, apparently recognizing that its viable contract AT–2884 would not sustain its claim, found it necessary to reach back among its expired contracts to find a dead subcontract that would have sustained its claim if AT–143 were still viable. To accept that approach would be to render the statute a nullity and to becloud all AEC contracts with uncertainty and unreliability.

Whether or not the AEC had a continuing "interest" in the invention and whether that interest was known to Grace (and, presumably to many others) is equally irrelevant. The question is not one of AEC's "interest." The AEC was presumably capable of incorporating that interest in AT–2884 if it did in fact have such interest and a desire that Grace should seek to satisfy it. The sole question is one of AEC's rights stemming from contractual obligations of Grace which existed at the time the invention was made or conceived. In deciding the issue under 42 USC 2182, the only relevant interests are those the satisfaction of which is sought or encompassed in a contract viable at the time an invention is made or conceived.

■ We agree with the board that whether the claimed microspheres were or were not made from sols left over from work done under the expired contract AT–143 should not influence the decision herein. Similarly, the admitted occasional errors in record keeping, leading to the board's reference to some commingling of AEC and Grace "work" and an "unresolved" question of whether AEC funds were used for Grace "projects" cannot be decisive factors. We are unable, as was the board, to determine on the evidence of record that the AEC has established commingling of a nature which might require that the work so done be considered to be encompassed by the AEC contract.

Appellee's argument regarding AT–2884 resolves into an insistence that "in the course of" must be interpreted as "during the life of" a contract. To so hold would, of course, destroy the very raison d'être of contracts, the very purpose of which is to spell out, as closely as possible, the work to be done, the goals to be sought and the rights and obligations of the parties. Reasonable men of affairs would have no difficulty in drafting a contract calling for assignment of "all inventions made or conceived during the life of this contract." That was not done here.

■■ The rule of statutory interpretation requires that the phrase "in the course of" and the word "under" mean different things. In our view, an invention made or conceived in performing, or as a result of performing, the work required by a contract is made or conceived "in the course of" that contract. That would be true even though the invention was not specifically sought in the terms of the contract. An invention is made or conceived "under" a contract when it is made or conceived during the life of the contract and the invention is, in whole or in part, specifically provided for by that contract. Neither of these fact situations applies here.

We cannot adopt appellee's position that all that is necessary is an "interrelationship" between the work specifically contracted for in AT–2884 and the claimed microspheres. We deal here with a statute. The legislative history of Section 152, Atomic Energy Act of 1954 (42 U.S.C. § 2182) makes it plain that the language extending AEC patent rights to "other relationships with the Commission" and to other "activities in connection with" AEC contracts was

**1396**

eliminated as being "unclear and possibly too sweeping." [5]

Accordingly, the claimed microspheres cannot be held to have been made or conceived "in the course of or under" the AEC contract.

The decision of the board is reversed.

Reversed.

---

5. House Report No. 963, 1961 U.S.Code Cong. and Admin.News, pp. 2591, 2597.